1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

DEBRA L. LARSEN,

            Plaintiff,

CASE NO.    **C07-5557RBL**

11
12

        v.

REPORT AND
RECOMMENDATION

13

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration,

Noted for May 30, 2008

14

            Defendant.

15
16

17        This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. §

18   636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, secretary of H.E.W.

19   v. Weber, 423 U.S. 261 (1976).  This matter has been fully briefed, and after reviewing the record, the

20   undersigned recommends that the Court remand the matter to the administration for further proceedings.

21                                    INTRODUCTION

22        Plaintiff, Debra Larsen, was born in 1963.  She completed high school.  She has past work

23   experience as a cashier, lumber stamper, janitor, bank teller and waitress (Tr. 65).  Reported earnings

24   indicate, she last worked  in 1993, when she injured her back while working (Tr. 48, 250).  The records

25   from treating rheumatologist Dr. Sager, establish that this injury developed into fibromyalgia syndrome

26   (Tr. 161-63). Through 1997, Dr. Sager's notes show that in addition to her fibromyalgia syndrome, Ms.

27   Larsen had emotional and psychological issues intertwined with her fibromyalgia (Cf. Tr. 148, 144, 164).

28   After September 11, 1997 (Tr. 130-31), Dr. Sager did not see Ms. Larsen again until September 11, 2006

(Tr. 396-99). At that time he concluded that Ms. Larsen had a chronic pain syndrome with features of fibromyalgia predominating and co-morbidities which might influence her fibromyalgia including sleep apnea, bipolar disorder and depression (Tr. 398).

Plaintiff applied for Supplemental Security Income Disability benefits on January 29, 2004 (Tr. 476-78). Ms. Larsen alleges disability due to post traumatic fibromyalgia, a back injury, irritable bowel syndrome, a sleep disorder, bipolar disorder, depression and an anxiety disorder (Tr. 53). Ms. Larsen's application was denied initially and on reconsideration. She requested a hearing, which was held October 25, 2006, before an administrative law judge ("ALJ")(Tr. 531-62). On March 23, 2006, the ALJ issued a decision finding that Ms. Larsen was not disabled. In making that determination, he made the following findings relevant to the issues in this case:

- The medical evidence establishes that the claimant has fibromyalgia, depression and a bipolar disorder (Tr. 20).

- Ms. Larsen has the residual functional capacity to lift up to 20 pounds occasionally and 10 pounds frequently. She can stand and walk for six hours in an eight hour day. She cannot perform work that involves frequent interaction with the public or coworkers (Tr. 20, Finding 4).

- Medical vocational rule 202.20 directs that Ms. Larsen is not disabled, as there are a significant number of jobs that she can perform (Tr. 20, Finding 7).

Ms. Larsen requested review of the ALJ's decision, which the Appeals Council denied on September 11, 2007 (Tr. 5-9). The denial of review made the ALJ's decision the final decision of the Commissioner.

On October 8, 2007, Plaintiff filed her Complaint with the Court seeking judicial review of the administrative decision. Plaintiff raises the following issues:

1. the ALJ failed to properly consider the findings of the State Agency Medical Consultant;

2. the ALJ failed to provide specific and legitimate reasons for rejecting the opinion of Dr. Sager;

3. the ALJ failed to properly consider the opinion of examining psychiatrist, Dr. Reuther;

4. the ALJ failed to provide sufficient reasons for rejecting the opinion of Dr. Sattar;

5. the ALJ failed to properly address the lay witness testimony; and

6. the ALJ erred when he used medical-vocational rule 202.18 to direct a finding of non-disability in this case when Ms. Larsen had significant non-exertional limitations.

## DISCUSSION

This Court must uphold the determination that plaintiff is not disabled if the ALJ applied the

1   proper legal standard and there is substantial evidence in the record as a whole to support the decision.

2   Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence

3   as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S.

4   389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less

5   than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v.

6   Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991).  If the evidence admits of more than one rational

7   interpretation, the Court must uphold the Secretary's decision.  Allen v. Heckler, 749 F.2d 577, 579 (9th

8   Cir. 1984).

9   *A.*   ***THE ALJ FAILED TO PROPERLY CONSIDER THE MEDICAL EVIDENCE***

10          The ALJ is entitled to resolve conflicts in the medical evidence.  Sprague v. Bowen, 812 F.2d

11   1226, 1230 (9th Cir. 1987).  He may not, however, substitute his own opinion for that of qualified medical

12   experts.  Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982).  If a treating doctor's opinion is

13   contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific

14   and legitimate reasons" supported by substantial evidence in the record for doing so.  Murray v. Heckler,

15   722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute

16   substantial evidence that justifies the rejection of the opinion of either an examining physician or a

17   treating physician."   Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996).

18          Here, the ALJ committed several errors.  First, the ALJ determined that Ms. Larsen could

19   stand and walk up to six hours a day. The ALJ stated that his finding was consistent with Dr. Hoskins'

20   opinion as the "non-examining physician of record" (Tr. 19).  However, Dr. Hoskins found Ms. Larsen

21   could only stand or walk up to two hours a day (Tr. 284).  Defendant concedes the error, but argues it was

22   harmless.  For reasons further discussed below, the undersigned does not agree.  The matter should be

23   remanded to cure this error.

24          The ALJ erred when he evaluated the opinion of treating physician, Dr. Sager.  As noted above,

25   Ms. Larsen began seeing Dr. Sager on February 3, 1994 (Tr. 161-63).  The record contains treatment notes

26   from Dr. Sager through September 11, 1997 (Tr. 130-60), and Plaintiff returned to Dr. Sager's office on

27   September 11, 2006 (Tr. 396-99).  During the intervening period, records from Kurt Kenoyer, PAC at the

28   Valley View Health Center indicated that they were trying to find a rheumatologist to treat Ms. Larsen,

but were having difficulty finding a doctor who would accept her insurance (Tr. 371, 529, 346, 337, 330).

After examining her on September 11, 2006, Dr. Sager found Ms. Larsen had a combination of problems that precluded work (Tr. 398).  He thought she would be unlikely to tolerate even modest periods in a static position, could not do anything repetitive, and could not do any significant lifting, carrying, overhead arm movements, squatting or bending (Tr. 398).  He also found her bipolar disorder, fibromyalgia and sleep apnea would cause mental limitations affecting her concentration, and causing fatigue (Tr. 398).  The ALJ did not even mention Dr. Sager's opinion in his decision.  Defendant states the ALJ inadvertently characterized Dr. Sager's opinion as a record of a physician's assistant, and nonetheless argues the ALJ's decision is based on other substantial evidence supporting the conclusion that Plaintiff is capable of working.  Again, the undersigned is not persuaded by Defendant's argument.  The ALJ failed to properly consider the opinion of a treating source, Dr. Sager.

Next, the court finds the ALJ failed to properly consider the opinion of examining psychiatrist, Dr. Reuther.  After examining Ms. Larsen on April 22, 2004, Dr. Reuther concluded that she would have difficulty interacting with co-workers and the public; and that "a highly structured work setting with minimal contact with the public might be beneficial to her in being able to complete work tasks" (Tr. 263). He thought Ms. Larsen's panic symptoms would interfere with her attendance and, contrary to the ALJ's statement that she could work, Dr. Reuther said, "It is unlikely she will be able to complete a normal workweek without experiencing some degree of difficulty from her psychiatric illness" (Tr. 263). In regard to Dr. Reuther's opinion, the ALJ stated:

> The claimant alleged symptoms such as confused thought(sic) and panic attacks. Nonetheless, mental status examination did not reflect any serious findings, and the physician noted that the claimant is capable of        work, however, she would benefit in a setting with minimal public contact.

(Tr. 16).

The ALJ's statement is not an accurate statement of Dr. Reuther's examination findings or opinions. Dr. Reuther noted Ms. Larsen "appeared quite anxious" and her mood seemed depressed (Tr. 260, 261). She could only remember two out of three objects after five minutes, even with prompting (Tr. 261). She could not remember the names of any presidents other than President Bush and President Clinton (Tr. 261). She could only name three big cities (Tr. 261). She could not do serial threes (Tr. 261). She had a problem drawing a clock face, only putting the number ten, and not any other numbers in their

1    appropriate positions (Tr. 261).

2          The ALJ stated that Dr. Reuther found Ms. Larsen would benefit from a setting with minimal

3    public contact. In addition, he stated that due to anxiety, Ms. Larsen would have difficulty interacting with

4    co-workers and the public; and that "a highly structured work setting with minimal contact with the public

5    might be beneficial to her in being able to complete work tasks." Dr. Reuther thought Ms. Larsen's panic

6    symptoms would interfere with her attendance and, contrary to the ALJ's statement that she could work,

7    Dr. Reuther said, "It is unlikely she will be able to complete a normal workweek without experiencing

8    some degree of difficulty from her psychiatric illness."  The court does not find Dr. Ruether's opinion

9    ambiguous, the ALJ erred when he did not acknowledge the limitations attributed to Ms. Larsen in Dr.

10   Reuther's report, and when he failed to give reasons for rejecting those limitations.

11         Finally, the court finds the ALJ did not give sufficient reasons for rejecting the opinion of Dr.

12   Sattar. Dr. Sattar examined Plaintiff on June 27, 2006 (Tr. 404-06), and completed a DSHS psychological

13   evaluation form (Tr. 400-03).  Dr. Sattar concluded that due to her mental impairments, Ms. Larsen would

14   have marked or very significant limitation in her ability to understand, remember and carry out more than

15   two-step instructions, learn new tasks and exercise judgment and make decisions (Tr. 402).  In support of

16   these conclusions, he noted that Ms. Larsen had difficulty concentrating on examination and that she had

17   hypomanic episodes which would interfere in making decision and judgments and a work setting (Tr.

18   402). He also opined that Ms. Larsen would have marked limitations in her ability to respond

19   appropriately to and tolerate the pressures and expectations of a normal work setting due to her unstable

20   mood and hypomania (Tr. 402).

21         The ALJ's finding that Ms. Larsen could perform light work that does not require frequent

22   interaction with co-workers or the public conflicts with Dr. Sattar's opinions that Ms. Larsen would also

23   have limitations in her ability to understand, remember and carry out more than two-step instructions,

24   learn new tasks and exercise judgment and make decisions, and respond appropriately to and tolerate the

25   pressures and expectations of a normal work setting. The ALJ addressed Dr. Sattar's opinion in his

26   decision, and he rejected Dr. Sattar's opinion because (1) treating records from Cascade "do not contain

27   any objective findings or the results of psychological testing which support this extreme assessment" (Tr.

28   16-17), (2) the assessment was "clearly inconsistent with the claimant's demonstrated abilities and daily

1   activities;" and (3) because "this opinion is also contradictory with the opinion of the physician who

2   conducted the most comprehensive psychiatric evaluation of record."

3      The ALJ's first reason is not legitimate since Dr. Sattar provided support for the limitations he

4   gave in his notes on the form and in his contemporaneous examination notes (Tr. 404-06). Dr. Sattar noted

5   that Ms. Larsen appeared to have problems concentrating (Tr. 402). On examination he noted that she was

6   unable to count backward from 100 by sevens and was also slow while telling him the months backward

7   (Tr. 405). Although the ALJ stated Dr. Sattar's opinion was inconsistent with Ms. Larsen's abilities and

8   activities, he did not provide any detail for this assertion.  Furthermore, as discussed above, Dr. Sattar's

9   opinion is not inconsistent with Dr. Reuther's evaluation.  The ALJ did not give specific and legitimate

10  reasons for rejecting Dr. Sattar's opinion and this is an additional reason for remand.

11  **B. *The ALJ Did Not Properly Address the Lay Witness Testimony***

12      The ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's

13  interests are considered.  Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983).   The ALJ can reject the

14  testimony of lay witnesses only if s/he gives reasons germane to each witness whose testimony s/he

15  rejects.  Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) Dodrill v. Shalala, 12 F.3d  915, 919 (9th

16  Cir. 1993).

17

18

19  Here, Plaintiff's family members submitted statements regarding her symptoms and  limitations.

20  Plaintiff's father, William Basket, completed a Function Report (Tr. 86-95). Mr. Baskett noted his

21  daughter needed rest periods after activities (Tr. 95). Ms. Larsen's sister, Tambra Zander also completed a

22  function report noting that her sister slept excessively (Tr. 77-85). Ms. Larsen's mother, Judy Baskett also

23  reported that she had limitations which would prevent her from performing light level work as found by

24  the ALJ (Tr. 122-27).

25      The ALJ rejected the statements  because the "paucity of objective evidence, which supports these

26  statements, and shows that the claimant's ability to perform the demands of work is seriously limited" (Tr.

27  19-20).  As discussed above the ALJ erred when he reviewed the medical evidence, and thus, to the extent

28  that he relies on his erroneous view of the medical evidence to reject the lay evidence, the undersigned

1    finds the ALJ erred.  On remand, the administration should reconsider this evidence.

2    **C.    *THE ALJ ERRED WHEN HE USED MEDICAL VOCATIONAL RULE 202.20 TO DIRECT A
        FINDING OF NON-DISABILITY IN THIS CASE, WHEN MS. LARSEN HAS SIGNIFICANT
3        NON-EXERTIONAL LIMITATIONS***

4            At step-five of the administrative decision making process used to determine disability, the ALJ

5    will generally refer to Medical Vocational Guidelines ("GRIDS"), which were adopted by the Secretary of

6    Health and Human Services in 1978.   The ALJ may apply GRIDS, when appropriate, to meet his burden

7    at step five instead of taking testimony from a vocational expert.  *See* Reddick v. Chater, 157 F.3d 715,

8    729 (9th Cir. 1998).  The GRIDS correlate a claimant's age, education, previous work experience, and

9    residual functional capacity to direct a finding of either disabled or not disabled. The ALJ must apply the

10   GRIDS if a claimant suffers only from an exertional impairment.  20 C.F.R. Part 404, Subpart P,

11   Appendix 2, §§ 200.00(a) & (e) (1988). However, where a claimant suffers solely from a nonexertional

12   impairment, the grids do not resolve the disability question and other testimony is required.  Id. at §

13   200.00(e)(1).  When a claimant suffers from both exertional and nonexertional impairments, the ALJ must

14   first consult the grids to determine whether a finding of disability can be based on the exertional

15   impairments alone. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e)(2). However, if the exertional

16   impairments alone are insufficient to direct a finding of disability, the ALJ must use the grids as a

17   framework but must independently examine the additional consequences resulting from the nonexertional

18   impairment(s).

19           Here, as discussed above, the ALJ failed to properly consider the medical evidence.  Hence, the

20   ALJ's finding at step-five is necessarily also erroneous.  On remand the ALJ should reconsider the

21   medical evidence and the issue of whether or not Plaintiff is capable of performing other work within the

22   national economy.  Since Ms. Larsen may be  limited to less than frequent contact with co-workers, it may

23   be necessary for the administration to call on a vocational expert to meet his burden at step five rather than

24   relying solely on the medical-vocational guidelines.

25                                                CONCLUSION

26           Based on the foregoing discussion, the Court should remand the matter to the administration for

27   further consideration.  On remand a new ALJ should be assigned to the matter.  Pursuant to 28 U.S.C. §

28   636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from

REPORT AND RECOMMENDATION
Page - 7

service of this Report to file written objections. *See also* Fed.R.Civ.P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **May 30, 2008**, as noted in the caption.

DATED this 7th day of May, 2008.

*/s/ J. Kelley Arnold*
J. Kelley Arnold
U.S. Magistrate Judge

REPORT AND RECOMMENDATION
Page - 8